IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ALI A. ALADIMI, | : | |
| Plaintiff, | : | Case No. 3:10cv00121 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| ALVIS HOUSE COPE CENTER,<br>*et al.*, | : | |
| | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

This matter is before the Court on a motion for judgment on the pleadings filed by Defendants Alvis House/Cope Counseling,[2] Gail Travino, and Lesley Crawford (Doc. #20); Plaintiff Ali A. Aladimi's memorandum in opposition (Doc. #29); said Defendants' reply (Doc. #31); and the record as a whole.

## II. Background/ The Parties' Claims

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Defendants indicate that the "Cope Center" denomination used in Plaintiff's complaint (*see* Doc. #2) is incorrect, and that "Alvis House/Cope Counseling" actually is the proper designation for the institutional Defendant. (*See* Doc. #20 at 1) (emphasis added).

Plaintiff Aladimi brings this action in this Court citing jurisdiction under 28 U.S.C. § 1343(3). (Doc. #2 at 2). The relevant facts underlying Plaintiff's relationship to these Defendants appears to be largely uncontested. Plaintiff is a Muslim and an Arab-American of "Middle-[E]astern origin." (Doc. #2 at 4). Some months subsequent to September 11, 2001, Plaintiff was arrested on charges related to receiving stolen goods. (*Id.*). Apparently, he eventually pled guilty to one or more federal criminal charges not identified in his complaint, and was incarcerated in federal custody. (*Id.* at 4-5). At some point during his custody, he was assigned to live in the Alvis House/Cope Center[3] [hereinafter "Alvis House"], a halfway house in Dayton, Ohio, where the individual defendants were employed. (*Id.* at 5, 7). According to Plaintiff's complaint, Defendant Travino managed the Dayton Alvis House facility (*id.* at 5), and Defendant Crawford served as Plaintiff's case manager. (*Id.* at 7).

For purposes of this motion, Plaintiff's *pro se* complaint has been construed liberally in his favor, *see Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), and the factual allegations have accepted as true, *see Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006), *cert. denied*, 551 U.S. 1104 (2007), as follows. Plaintiff avers that

---

[3]*See* n.2, *supra.*

Alvis House receives federal and state funding for routinely receiving newly released federal and state inmates into its facility. (Doc. #2 at 5). He contends that inmates released from Ohio prisons into Alvis House are permitted to live "under less restrictive rules and regulations," while federal inmates are subjected to "more restrictive rules and regulations and are prone to be subjects of abuse." (*Id.*).

Plaintiff alleges that Defendants Travino, Crawford, and unidentified John Does violated his religious rights and subjected him to retaliation, abuse, and discrimination because he is Arab-American, Muslim, and wrongly perceived to be a terrorism suspect. (*See* Doc. #2 at 7-11). First, he maintains that his religious rights were infringed because Alvis House would not permit him to make a one-time "blanket" request to attend weekly Muslim services, and instead required him to acquire prior approval each week. (*Id.* at 7). When Plaintiff forgot to obtain advance approval to attend a week's Muslim services, he was not permitted to attend. (*Id.*). Additionally, after Plaintiff improperly "was placed on CCC status"[4] between March and April of 2009, he was denied access to Friday Muslim religious services, even though he had received prior approval. (*Id.*). Plaintiff's written grievance about this practice was denied by Defendant

---

[4]As no explanation of "CCC" status is provided, the Court has proceeded under the assumption that it represents a heightened punishment status.

Travino as having no merit. (*Id.*).

Second, Plaintiff claims that he was subjected to retaliation in the form of threats, intimidation and abuse as a result of attempting to file grievances about his treatment at Alvis House. (*Id.* at 7-9). According to Plaintiff, after he was fired from his job with a furniture company on April 15, 2009, "as a result of bodily contamination with bedbugs" acquired at the Alvis House facility, Defendant Crawford "falsely reported to her superiors that the reason" for Plaintiff's termination "was not only the bedbugs, but also because my employer could not put up with my nonsense." (*Id.* at 8). In addition, Plaintiff claims that in reliance on "misrepresentations and unfounded accusations," and without a hearing, Defendant Travino directed that Plaintiff be charged with "violating a condition of a community program" and recommended that he "be transferred to prison and receive an additional 13 [percent] incarceration time," resulting in his arrest and return to prison on April 24, 2009. (*Id.* at 8-9).

Finally, Plaintiff contends that Defendants discriminated against him based on his religion, ethnicity, and being perceived incorrectly as a "terrorist." (*Id.* at 9). Specifically, he alleges that the disciplinary actions taken against him were not consistent with punishments other Alvis House residents received; that he was singled out for greater scrutiny as to violations; that he was placed in "CCC"

status"[5] without explanation; that he was denied access to religious services while others were permitted to attend; that he was sanctioned before facts were investigated; that he was denied a fair and timely hearing as to alleged violations; that staff members gave inconsistent reports as to the same violation alleged against him; and that Alvis House filed false and inaccurate reports with the "BOP" [Bureau of Prisons] in order to have Plaintiff sanctioned further and returned to prison for additional time. (*Id.*).

On January 21, 2011, Defendants Alvis House/Cope Counseling[6] [hereinafter "Alvis House"], Travino and Crawford filed a joint motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings. (Doc. #20). Defendants allege that Plaintiff's complaint fails to state a claim upon which relief can be granted, in that Plaintiff has failed to set forth a viable civil rights claim against them. (*Id.* at 5-10). Presuming that Plaintiff's assertion of jurisdiction pursuant to 28 U.S.C. § 1343(3) (*see* Doc. #2 at 2) reflects an intent to state a cause of action under 42 U.S.C. § 1983 (Doc. #20 at 5-6), Defendants urge that Plaintiff has failed to establish the requisite Section 1983 element that Defendants acted "under color of State law." (*Id.* at 6-10). Without directly so stating, Defendants suggest that

---

[5]*See* n.4, *supra.*

[6]*See* n.2, *supra.*

they all are private parties whose conduct may not be construed as "state action" under any of the tests used "to determine whether private conduct is attributable to the state." (*Id.* at 6). Defendants then present arguments purporting to show why none of the four applicable tests serves to convert their actions to those of the state for purposes of this case. (*Id.* at 6-10).

Since filing his complaint, Plaintiff has retained an attorney to represent him in this matter. (*See* Doc. #26). In opposing Defendants' motion for judgment on the pleadings, Plaintiff argues through counsel that his complaint contains factual allegations sufficient to state causes of action under 42 U.S.C. § 1983, 42 U.S.C. § 2000cc-1 [the Religious Land Use and Institutionalized Persons Act, or "RLUIPA"], and 42 U.S.C. § 1985. (Doc. #29 at 5-22). As to Defendants' assertion that state action is lacking (*see* Doc. #20 at 6-10), Plaintiff urges that Defendant Alvis House's operation as "a community-based correctional facility" amounts to "performing a government function," and that said Defendant "acted under color of state law with respect to" Plaintiff because he was detained there as a federal prisoner "by virtue of the power conferred upon [Alvis House] by the State of Ohio, pursuant to [Ohio Rev. Code §] 2967.14." (Doc. #29 at 7).

In reply, Defendants urge that neither Ohio Rev. Code § 2967.14's licensing provisions, the existence of a contract between Alvis House and the State of Ohio,

nor state and federal funding of Alvis House suffices to establish that such Defendant was acting under color of state law. (Doc. #31 at 1-6). Defendants also argue that Plaintiff's effort to state a RLUIPA claim fails for similar reasons, "as Defendants were not a government entity for the purposes of th[at] statute." (*Id.* at 6-7). Finally, Defendants contend that "Plaintiff never asserted a § 1985 claim in his complaint," as that complaint fails to articulate viable conspiracy allegations. (*Id.* at 7-8). Accordingly, Defendants ask that their motion for judgment on the pleadings be granted. (*Id.* at 8).

### III. <u>Applicable Standards</u>

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) utilizes the same standard of review as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Vickers*, 453 F.3d at 761. A plaintiff's "'well-pleaded material allegations . . . must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this requirement and survive a Rule 12(c) motion, a complaint must supply

enough facts to render a claim more than merely possible; it "must plead 'sufficient factual matter' to render the legal claim plausible . . ." *Fritz*, 592 F.3d at 722 (citing *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009)). "[T]he plaintiff must provide the grounds for its entitlement to relief, *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001), and that 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), *cert. denied*, __ U.S. ___, 131 S. Ct. 1047 (2011).

IV. <u>Analysis</u>

    A. **Plaintiff's 42 U.S.C. § 1983 Claims**

To state a claim under Section 1983, "the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz*, 592 F.3d at 722. Here, although Defendants urge that Plaintiff's complaint fails to establish the state action element of that test (Doc. #20 at 5-10), the Court is unable to determine at this juncture the exact nature of Defendant Alvis House's relationship with the State of Ohio, and the extent to which said Defendant's conduct therefore may be deemed attributable to the State.

Among the arguments advanced in Plaintiff's opposing memorandum, for example, is an assertion that by operating a putative "correctional facility," Alvis House is "performing a traditional state function," and thereby was acting under color of state law with respect to Plaintiff's detention. (Doc. #29 at 6). Defendants' reply counters that Plaintiff "failed to allege any facts supporting the contention that operating a halfway house is in any way a[n] historically exclusive state function." (Doc. #31 at 5). A factual accounting of the history of state government functions, however, seems too much to expect of a complaint subject to mere notice-pleading standards, *see* Fed. R. Civ. P. 8(a)(2), as well as the cautionary provisions of Fed. R. Civ. P. 11, and certainly would set an unreasonably high bar for a *pro se* pleading. *See Garrett*, 374 F. App'x at 614.

Given that the Court is limited on Fed. R. Civ. P. 12(c) motions to considering matters that appear on the face of the pleadings, the issue of halfway house operation as a matter of public function seems one more amenable to resolution via Fed. R. Civ. P. 56's provisions.[7] No less an authority than the United States Supreme Court has acknowledged that the "state action" question involves a "necessarily fact-bound inquiry." *Brentwood Acad. v. Tennessee*

---

[7]*See, e.g.,* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004) ("hasty or imprudent use of [Rule 12(c)] by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim").

*Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)). In the context of a motion for summary judgment, this Court may consider factual information from beyond the pleadings that may be material to the "state action" issue yet too unwieldy for inclusion in pleadings -- *e.g.*, whether Alvis House is "pervasive[ly] entwine[d]" with public institutions or public officials on its Board of Trustees. *See Brentwood Acad.*, 531 U.S. at 298; (*see also* Doc. #20 at 8-9). Indeed, the docket reflects that Defendants already have sought and been granted additional time in which to file a motion for summary judgment. (*See* Doc. #28). Defendants' motion for judgment on the pleadings (Doc. #20) therefore should be denied without prejudice as to Plaintiff's Section 1983 claims.

    **B.**     **Plaintiff's RLUIPA Claims**

In his opposing memorandum, Plaintiff argues that the allegations of his *pro se* complaint are sufficient to set forth a viable claim under RLUIPA. (Doc. #29 at 12-16). Under the provisions of that statue, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a)(a)-(2). Although no direct reference to RLUIPA or the corresponding United States Code sections appears in Plaintiff's *pro se* complaint (*see* Doc. #2), Defendants' reply implicitly concedes that the

religious discrimination allegations of Plaintiff's complaint are sufficient to set forth the basic elements of a RLUIPA claim, with the exception of state action. (*See* Doc. #31 at 6-7).  This Court agrees.

Having already determined that the pleadings alone do not provide an adequate basis on which to decide that "state action" question, *see supra*, the Court concludes that Defendants' Rule 12(c) motion (Doc. #20) should be denied without prejudice as to Plaintiff's RLUIPA claim as well.

### C. Plaintiff's 42 U.S.C. § 1985 Claims.

Finally, in opposing Defendants' motion, Plaintiff urges that his *pro se* complaint "sufficiently states a claim for relief under Section 1985." (Doc. #29 at 17).  Conversely, Defendants argue that "Plaintiff never asserted a § 1985 claim in his complaint," and that this Court therefore "should not even entertain the conspiracy allegations" raised in Plaintiff's opposing memorandum. (Doc. #31 at 7).  They urge that efforts by Plaintiff's later-acquired counsel "to re-craft and add to Plaintiff's original complaint through a Memo in Opposition" cannot remedy the deficiencies in that *pro se* document.  (*Id.* at 8).

In order to establish a Section 1985(3) violation, a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the

> conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (citing *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). Furthermore, conspiracy under Section 1985 must be pled with specificity. *Perry v. Southeastern Boll Weevil Eradication Found., Inc.,* 154 F. App'x 467, 477 (6th Cir. 2005) (citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984)).

Here, careful review reveals that Plaintiff's *pro se* complaint not only fails to refer to Section 1985, but also completely omits any mention of the word "conspiracy." (*See* Doc. #2). Indeed, the only allusion to the existence of any possible collaboration among Defendants that could be inferred from that complaint is a reference to the "organized" and "cohesive" nature of the staff, whose members "cover[ ] for one another." (*Id.* at 5). Plaintiff's counsel's valiant attempts to expand on the complaint's allegations and implications (*see* Doc. #29 at 19-21) notwithstanding, that effort cannot breath life into a Section 1985 claim.

Despite the significant latitude afforded *pro se* litigants, "those who proceed without counsel must still comply with the procedural rules that govern civil cases." *Frame v. Superior Fireplace*, 74 F. App'x 601, 603 (6th Cir. 2003) (citing *Haines*, 404 U.S. at 520, *McNeil v. United States,* 508 U.S. 106, 113 (1993)). As a

result, *pro se* status "does not exempt [a plaintiff] from the requirements that he properly plead his case, make out an actionable cause, and show that if he proved all he claims, he would prevail at trial." *Moore v. Holbrook*, 2 F.3d 697, 702 (6th Cir. 1993) (Batchelder, J., dissenting) (citing *Hughes v. Rowe,* 449 U.S. 5, 10 (1980)).[8] Even with the broader leeway afforded by this Court in reviewing Plaintiff's *pro se* complaint, that pleading simply cannot be read to satisfy the degree of specificity required of Section 1985 conspiracy allegations, *see Perry,* 154 F. App'x at 477, nor is that the only deficiency that plagues Plaintiff's complaint. *See, e.g, Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (employees of same entity generally cannot form a conspiracy). Accordingly, Defendants' motion for judgment on the pleadings (Doc. #20) is well taken as to Plaintiff's purported Section 1985 claims.

**IT THEREFORE IS RECOMMENDED THAT**:

> 1) Defendants' motion for judgment on the pleadings (Doc #20) be GRANTED in part and DENIED in part;
>
> 2) Defendants' motion (Doc. #20) be GRANTED as to Plaintiff's claims under 42 U.S.C. § 1985, and such claims be DISMISSED without prejudice; and

---

[8]Indeed, Defendants validly question whether Plaintiff's complaint warrants review under the "less stringent standard" generally accorded *pro se* pleadings, given that Plaintiff "has since hired counsel," who "has had ample opportunity to file an amended complaint and remedy all of the insufficiencies in the original complaint." (Doc. #31 at 8).

      3) Defendants' motion (Doc. #20) be DENIED without prejudice as to Plaintiff's claims under 42 U.S.C. § 1983 and RLUIPA.

July 29, 2011                                                     s/Sharon L. Ovington
                                                                              Sharon L. Ovington
                                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C),(D),(E), or (F). Such objections shall specify the portions of the report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).