IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALI A. ALADIMI,                        :

               Plaintiff,        :

               vs.                :

ALVIS HOUSE/ COPE CENTER, et al.,      :

               Defendants        :

Case No. 3:10-cv-121

JUDGE WALTER HERBERT RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. #40); JUDGMENT TO ENTER IN
FAVOR OF DEFENDANTS; TERMINATION ENTRY

---

After serving most of his sentence in federal prison, Plaintiff Ali A. Aladimi,

an Arab-American Muslim, was assigned to Alvis House/Cope Counseling[1] ("Alvis

House"), a private residential reentry center or "halfway house" located in Dayton,

Ohio, to serve the remainder of his sentence.  He was later arrested and sent back

to prison for violating certain conditions of his pre-release.  He then filed suit

against Alvis House and two of its employees, Gail Travino and Leslye Crawford.

Aladimi seeks relief under 42 U.S.C. § 1983, alleging that, during the three

months he spent at Alvis House, Defendants, while acting under color of state law,

---

[1] Cope Counseling was incorrectly designated in the Complaint as "Cope
Center."

deprived him of rights secured by the First and Fourteenth Amendments to the Constitution of the United States.  He also alleges violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.  This matter is currently before the Court on Defendants' Motion for Summary Judgment.  Doc. #40.

## I.    Background and Procedural History

According to Gail Travino, Regional Director of the Alvis House facility located in Dayton, Ohio, Alvis House is a "private, not-for-profit organization, designed to help its residents transition from the correctional supervision of the criminal justice system as they reenter the community."  Travino Aff. ¶3.  Alvis House has a contract with the Federal Bureau of Prisons ("BOP") community corrections program to house and assist federal inmates who are nearing the end of their prison sentences.  *Id.* at ¶6; Real Aff. ¶3.  Although these inmates are monitored by the Alvis House staff, they remain in federal custody throughout their stay.  Travino Aff. ¶10; Real Aff. ¶8.

Contract performance requirements for the management and operation of residential reentry centers housing federal inmates are set forth in the BOP's "Statement of Work."  Travino Aff. ¶9; Real Aff. ¶9; Ex. A to Real Aff.  The "Statement of Work" requires close monitoring and control of the residents' movement in and out of the facility.  Residents are generally permitted to leave Alvis House for certain activities, including work and attendance at religious

2

services if they receive advance approval from their case managers and provide relevant contact information.  Travino Aff. ¶¶10-11; Real Aff. ¶¶13-14.

On January 26, 2009, Michael Real, Community Corrections Manager for the BOP in Cincinnati, Ohio, assigned Ali Aladimi to the Dayton Alvis House facility. Real Aff. ¶7; Travino Aff. ¶7.  While he was at Alvis House, Aladimi was "written up" thirteen times for violating curfew, failing to follow personal hygiene rules, failing to complete house assignments, and straying from his approved itinerary. Travino Aff. ¶23; Ex. D to Travino Aff.

As a result of these violations, and because Aladimi was perceived to be a threat to the community, Real placed him on Community Corrections Component ("CCC") status for the remainder of his stay, resulting in the elimination of certain privileges.  Travino Aff. ¶24; Real Aff. ¶17. Aladimi remained at Alvis House until April 24, 2009, when he was arrested and returned to prison for repeated violations of the program requirements.  Travino Aff. ¶25.

During his three-month stay at Alvis House, Aladimi filed twelve grievances concerning a variety of issues, including discrimination, intimidation, harassment and retaliation by Alvis House staff members, denial of his right to attend religious services, failure to provide requested copies of weekly status reports, failure to conduct a fair and proper hearing, and bedbug infestation.  Travino Aff. ¶21; Ex. B to Travino Aff.  Travino responded in writing to each grievance that was not duplicative.  Travino Aff. ¶22; Ex. C to Travino Aff.

3

On March 31, 2010, Aladimi, proceeding *pro se*, filed suit against Alvis House, Gail Travino, and his case manager, Leslye Crawford.  He alleges that he was denied the right to attend religious services and that, after he submitted grievances, he was threatened, intimidated, and retaliated against.  He also alleges that he was discriminated against on the basis of his religion, ethnicity, and his background as a perceived "terrorist."

Defendants filed a motion for judgment on the pleadings.  They construed the Complaint as one seeking relief under 42 U.S.C. §1983 and argued that Aladimi had failed to state a claim upon which relief can be granted.  Doc. #20.  Aladimi then obtained counsel, who filed a memorandum in opposition to Defendants' motion.  Doc. #29.  Counsel argued that the Complaint sufficiently stated a claim for relief under: (1) 42 U.S.C. § 1983, for alleged violations of the First and Fourteenth Amendments to the United States Constitution; (2) RLUIPA; and (3) 42 U.S.C. § 1985(3).

After Defendants filed their reply brief, Doc. #31, Magistrate Judge Ovington issued a Report and Recommendations.  She recommended that the Court grant Defendants' motion with respect to the § 1985(3) claim, but deny it with respect to the § 1983 and RLUIPA claims.  She noted that the viability of those claims turned on the question of whether Defendants could be deemed "state actors," an issue better suited for summary judgment.  Doc. #32.  No objections were filed and, on August 17, 2011, the Court adopted the Report and Recommendations.

4

Doc. #33. Defendants then sought and were granted leave to file a motion for summary judgment. That motion is now fully briefed.

## II.     Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support

5

of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal*

6

*Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S.

1091 (1990); *see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561

(7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.

1992), *cert. denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the

district court a duty to sift through the record in search of evidence to support a

party's opposition to summary judgment . . . ."). If it so chooses, however, the

court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Analysis

#### A. 42 U.S.C. § 1983

In order to recover damages under 42 U.S.C. § 1983, a plaintiff must prove

that the defendant, while acting under color of state law, violated rights secured by

the Constitution or laws of the United States. *See Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 150 (1970). Defendants maintain that summary judgment is

appropriate because Plaintiff cannot prove that Alvis House, a private entity, or its

employees were "acting under color of state law" with respect to the alleged

violations.

As the Supreme Court has noted, "most rights secured by the Constitution

are protected only against infringement by governments." *Flagg Bros., Inc. v.

Brooks*, 436 U.S. 149, 156 (1978). *See also American Mfrs. Mut. Ins. Co. v.

Sullivan*, 526 U.S. 40, 50 (1999) ("the under-color-of-state-law element of § 1983

excludes from its reach 'merely private conduct, no matter how discriminatory or

7

wrongful.'"). Even though a private contractor is performing a public contract at the time of the alleged wrongdoing, this does not automatically mean that the private contractor's conduct is deemed to be state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).

A private actor may be deemed to be acting "under color of state law" only when "the conduct allegedly causing the deprivation of a federal right" is "fairly attributable to the state." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). The existence of state action is a question of law to be determined by the court. *See Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

In determining whether private conduct is "fairly attributable to the state," courts have applied three tests: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *See Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). In this case, Aladimi relies only on the "public function" test.

Under the "public function" test, state action may be present when the private entity exercises "powers traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). The plaintiff bears the burden of proof on this issue, and must present evidence that, historically, the power exercised by the defendant is one that has been traditionally exclusively reserved to the state. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). The Sixth Circuit has noted that "[o]nly a narrow range

8

of private action . . . has been deemed state action under this test."  Examples include the holding of elections, and the taking of private property under the eminent domain power.  *Id.*

On several occasions, though, the Sixth Circuit has held that operation of a prison constitutes a "traditional state function," and that the actions of individuals employed by private entities operating prisons pursuant to a state contract were "fairly attributable to the State."  *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (holding that defendants were acting under color of state law in that they were performing the "traditional state function" of operating a prison); *Flint v. Kentucky Dep't of Corrections*, 270 F.3d 340, 351-52 (6th Cir. 2001) (holding that individual employed by private entity under a contract with state was a state actor because he "performed functions typically attributed to the State: housing and providing security for individuals who had been convicted of a crime"); *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (holding that a privately-operated detention center "is no doubt performing a public function traditionally reserved to the state" and that the power exercised was possessed by virtue of state law).

Aladimi argues that, by logical extension, the operation of a halfway house must also be deemed a traditional state function.  In support, Aladimi cites only to *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, at ¶28, in which the court held that Oriana House, a community-based

9

correctional facility, performs a "historically governmental function" and is therefore the "functional equivalent" of a public office for purposes of the Public Records Act. Defendants note that this was not a § 1983 action. They further note that Alvis House is a privately-operated halfway house, as opposed to a community-based correctional facility. Defendants argue that Aladimi has failed to show that the operation of a halfway house has historically been a function traditionally exclusively reserved to the State.

The Court is inclined to agree with Aladimi that the operation of a halfway house is somewhat analogous to the operation of a prison. If Aladimi were in *state* custody and housed at Alvis House pursuant to a contract with the State of Ohio, the Court would have little difficulty, based on Sixth Circuit case law, in finding that Alvis House and its employees were "state actors" performing a function traditionally reserved to the State.

But Aladimi is in *federal* custody and was assigned to reside at Alvis House pursuant to a contract with the Bureau of Prisons. As one court has aptly noted, "maintaining custody of *federal* prisoners is neither a power 'possessed by virtue of *state* law' nor one that has been 'traditionally exclusively reserved to the *state*.' The authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government." *Sarro v. Cornell Corrections, Inc.*, 248 F. Supp.2d 52, 64 (D.R.I. 2003) (emphasis in original).

10

In short, maintaining custody of federal prisoners is not a "public function" traditionally reserved to the State.  Even if Alvis House and its employees may be deemed "state actors" with respect to their custody of state prisoners, they are not necessarily "state actors" with respect to their custody of federal prisoners. *See George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996) ("An entity may be a state actor for some purposes but not for others.").

Aladimi nevertheless argues that his status as a federal inmate housed at Alvis House pursuant to a contract with the federal BOP does not preclude a finding that Alvis House and its employees are "state actors."  In support, he cites to *Henderson v. Thrower*, 497 F.2d 125 (5th Cir. 1974).  In that case, a federal prisoner temporarily housed in the Mobile, Alabama city jail filed suit under § 1983, alleging denial of adequate medical care.  The district court dismissed the complaint, finding that because the plaintiff was at the jail pursuant to a contract with the BOP, there was no "state action."  The Fifth Circuit reversed, noting that the focus should be "not on the particular circumstances which brought the plaintiff under state control, but rather on the fact of that control and the manner of its exercise."  *Id.* at 125-26.

In *Henderson*, the court noted that even though the contract permitted the federal government to inspect the state facilities, the contract in no way authorized "federal interference with the operation of the prisons or jails.  Control of the inmates, state and federal, rests in the local authorities."  *Id.* at 126.  Because the

11

defendants in *Henderson* acted pursuant to authority conferred on them by state and local governments, the court concluded that they could not "escape liability under § 1983 on the basis of plaintiff's peculiar status [as a federal inmate.]" *Id.*

The district court in *Jarno v. Lewis*, 256 F. Supp.2d 499 (E.D. Va. 2003), relied heavily on *Henderson* in determining that "state action" existed in a suit filed by an immigration detainee housed in a local jail pursuant to a contract with the federal government. After jail guards physically attacked the detainee on two separate occasions, he filed a § 1983 action against them. The court rejected defendants' argument that plaintiff's status as a federal prisoner housed at the jail pursuant to a contract with the United States Immigration and Naturalization Service ("INS") transformed defendants from state actors into federal actors.

The plaintiff argued that because the INS "exercised no meaningful control over the manner in which he was held," the defendants must be deemed "state actors." The court agreed with him. It noted that plaintiff's claims stemmed from the jail's alleged failure to train its guards concerning the use of excessive force. The federal contract at issue did not specify how the jail was to supervise its guards. The court therefore found the requisite "state action" and denied defendants' motion to dismiss the § 1983 claim. *Id.* at 503.

In the Court's view, Aladimi's case is clearly distinguishable from *Henderson* and *Jarno*. In stark contrast to the federal contracts at issue in those cases, which gave the federal government little or no authority over the daily operation of the

local jails, the BOP's "Statement of Work" sets forth nearly 170 pages of detailed requirements for all contractors operating residential reentry centers for federal offenders.  These requirements govern a wide variety of topics, including the facility itself, the training of personnel, the intake process, pest control, safety, food, medical services, substance abuse treatment, discipline, and release preparation.  The "Statement of Work" specifically requires the contractor to monitor all movement of offenders in and out of the facility.  It also requires offenders to be given access to religious services.  In addition, the "Statement of Work" establishes various levels of offender supervision, with the "Community Corrections Component" being the most restrictive.  It includes a list of prohibited acts and a disciplinary severity scale, governing actions that the contractor may take against federal offenders who violate program rules.  It also requires the contractor to comply with the U.S. Constitution and all applicable federal, state and local laws, and to establish a written grievance procedure.  Ex. 1 to Real Aff.

It is clear that the BOP maintains a great deal of control over the daily operations of its residential reentry centers such as Alvis House, and dictates how the contract is to be carried out.  The actions Aladimi complains of – being denied the right to attend religious services, being discriminated against on the basis of his race and religion, and being retaliated against, by being placed in the Community Corrections Component of the program, after filing grievances – are all addressed in the BOP's "Statement of Work."  Under the circumstances presented here, the

Court concludes that Defendants cannot be deemed "state actors" for purposes of Aladimi's § 1983 claims.

One final argument can be easily disposed of.  Aladimi notes that Alvis House receives state funding and is licensed by the State of Ohio pursuant to Ohio Revised Code § 2967.14(C).  He maintains that because he was detained in a facility operated by virtue of power conferred by the State of Ohio, Defendants should be deemed "state actors" for purposes of § 1983.  Defendants correctly note, however, that "[s]tate regulation of a private entity, even if it is extensive and detailed, is not enough to support a finding of state action."  *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992).  Likewise, the mere fact that Alvis House receives state funding does not render it, or its employees, a state actor. *Id.*

For the reasons explained above, the Court concludes that the conduct that allegedly caused the deprivation of Aladimi's federal rights is not "fairly attributable to the state."  *Lugar*, 457 U.S. at 937.  Alvis House is a private entity and, under the circumstances presented here, neither Alvis House nor its employees may be deemed "state actors."  Because "state action" is an essential element of a § 1983 claim, the Court SUSTAINS Defendants' motion for summary judgment on Aladimi's § 1983 claims.[2]

---

[2]  In *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action for

(continued...)

14

**B.    RLUIPA**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA")

provides, in relevant part as follows:

> No government shall impose a substantial burden on the religious
> exercise of a person residing in or confined to an institution . . . even
> if the burden results from a rule of general applicability, unless the
> government demonstrates that imposition of the burden on that
> person--
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling
> governmental interest.

42 U.S.C. § 2000cc-1(a).[3]

As used in this subsection of the statute, the term "government" is defined

as "(i) a State, county, municipality, or other governmental entity created under the

authority of a State; (ii) any branch, department, agency, instrumentality or official

of an entity listed in clause (i); and (iii) any other person acting under color of State

law." 42 U.S.C. § 2000cc-5(4).

---

[2](...continued)
constitutional violations by a federal agent acting under color of federal law.
*Bivens*, however, has been narrowly construed.  Therefore, even if Aladimi had
pursued a *Bivens* claim against Alvis House and its employees, it does not appear
that the claim would be viable. *See Correctional Servs. Corp. v. Malesko*, 534
U.S. 61 (2001) (holding that federal offender serving time in a privately-operated
halfway house had no implied right of action against the halfway house under
*Bivens*); *Minneci v. Pollard*, 132 S. Ct. 617 (2012) (holding that prisoner at a
federal facility operated by a private company could not assert a *Bivens* claim
against privately-employed personnel working at that facility).

[3]  This general rule applies in any case in which "the substantial burden is
imposed in a program or activity that receives Federal financial assistance" or in
which the substantial burden affects commerce.  42 U.S.C. § 2000cc-1(b).

In *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1077 (9th Cir. 2008), the court noted that RLUIPA, by its terms, regulates only state and local governments; as a general rule, it does not apply to action by the federal government. *See also Rogers v. United States*, 696 F. Supp.2d 472, 486 (W.D. Pa. 2010) ("Because Plaintiffs are federal inmates, the RLUIPA claims should be dismissed.").

Defendants argue that because Alvis House is a private entity, and because Aladimi cannot establish that Defendants were "acting under color of state law," they are entitled to summary judgment on this claim.  The Court agrees.

Citing *Dean v. Corrections Corporation of America*, 540 F. Supp.2d 691 (N.D. Miss. 2008), Aladimi argues that because Alvis House is a "creature of state law," operating pursuant to a state-issued license, it should be deemed an "instrumentality" of the State of Ohio for purposes of RLUIPA.  In the alternative, Aladimi argues that Alvis House and its employees were acting under color of state law.

In *Dean*, the Corrections Corporation of America ("CCA"), a private entity, agreed to house certain inmates pursuant to a contract with the Hawaii Department of Public Safety, a subdivision of Hawaii's state government.  The court held that CCA, as an "instrumentality" of the Department of Public Safety, a program or activity that receives federal funding, was subject to liability under RLUIPA.  The court stated that "a state government accepting federal funds for

16

prisons may not dispense with requirements of RLUIPA simply by contracting with third parties to carry out the state function of operating prisons." *Id.* at 694.

Defendants note that *Dean* is factually distinguishable in that it involved a contract between the private entity and a subdivision of Hawaii's state government. In contrast, this case does not involve a contract with the State, but rather with the federal BOP. Although Alvis House is licensed by the State of Ohio, this does not render it an "instrumentality" of the State. In addition, the Court has already found that Alvis House and its employees were not acting "under color of state law."

For these reasons, the Court finds that Defendants are not subject to liability under RLUIPA. The Court therefore SUSTAINS Defendants' motion for summary judgment on Aladimi's RLUIPA claim.

## IV. Conclusion

The Court concludes that Defendants are not subject to liability under 42 U.S.C. § 1983 or RLUIPA, 42 U.S.C. § 2000cc. The Court therefore SUSTAINS Defendants' motion for summary judgment. Doc. #40. Judgment will be entered in favor of Defendants and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

17

Date:  March 6, 2012

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record